[S. F. No. 21175.   In Bank.   June 13, 1963.]

CITIZENS UTILITIES COMPANY OF CALIFORNIA, Petitioner, v. THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent; SAN LORENZO VALLEY COUNTY WATER DISTRICT, Real Party in Interest.

Bacigalupi, Elkus & Salinger, Claude N. Rosenberg and William G. Fleckles for Petitioner.

No appearance for Respondent.

Wilson, Harzfeld, Jones & Morton and John E. Lynch for Real Party in Interest.

Martin McDonough, McDonough, Holland, Schwartz, Allen & Wahrhaftig, Raymond McClure and Myron B. Haas as Amici Curiae on behalf of Real Party in Interest.

PETERS, J.—Prohibition is sought by Citizens Utilities Company of California to restrain the superior court from proceeding to trial in an eminent domain action pending in that court in which action Citizens is the condemnee. It is contended that the respondent court has no jurisdiction to proceed.

The real party in interest, San Lorenzo Valley County Water District, filed in respondent superior court a complaint by which it sought to condemn, pursuant to the general eminent domain statutes (Code Civ. Proc., pt. 3, tit. 7), petitioner's entire Boulder Creek District water system in Santa Cruz County, excepting only office equipment and furniture.[1] Petitioner answered this complaint, averring that the value of its water system was $1,500,000, and asserting as an affirmative defense that the condemnation of its water system under the general eminent domain statutes violates petitioner's state and federal constitutional rights because under section 1249 of the Code of Civil Procedure[2] the trier of fact is prevented from assessing as compensation the value of improvements and extensions made by petitioner to its water system in discharge of its obligations subsequent to the issuance and service of

---

[1] Real party had originally attempted to condemn the property here involved pursuant to the alternative procedure established in the Public Utilities Code, but this proceeding was dismissed, apparently because of the delays involved (56 Cal.P.U.C. 581).

[2] That section provides in part: ''For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the issuance of summons and its actual value at that date shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken but injuriously affected, in all cases where such damages are allowed. . . . No improvements put upon the property subsequent to the date of the service of summons shall be included in the assessment of compensation or damages.''

summons in the eminent domain action. Thereafter, petitioner moved in respondent court to dismiss the proceeding on the ground that condemnation of its water system under the provisions of the Code of Civil Procedure, including section 1249, was unconstitutional, and, that therefore the court lacked jurisdiction. In support of this motion petitioner presented an affidavit by its general manager which averred that: "On December 31, 1961 [i.e., after the valuation date fixed by Code of Civil Procedure section 1249] Defendant had improvement work in progress in connection with the said water system amounting to the sum of $350,614," and that during the period November 30, 1961, through January 31, 1962, alone, defendant expended $24,200 "for the purpose of preserving and improving its said water system." The affiant further declared that the petitioner would be required to make similar expenditures for improvements and extensions "during the entire duration of these proceedings."

The trial court denied the motion to dismiss. In its memorandum opinion it held that Code of Civil Procedure section 1249 could not constitutionally be applied and was not intended by the Legislature to apply where, as here, postvaluation date expenditures are made involuntarily under compulsion of law; that the failure of the Legislature to provide for this contingency could be remedied by the trial court pursuant to its inherent power to devise a proper procedure (citing the inverse condemnation cases) ; and, that it would, therefore, set the valuation date up to the date of trial, in order to protect petitioner's right to full compensation.

Thus the trial court decided the only issue presented to it, namely, whether section 1249 of the Code of Civil Procedure could constitutionally be applied to petitioner so as to prevent recovery of compensation or damages for any improvements and betterments that petitioner was required to make to its system after the date of the summons and before judgment. The trial court decided this issue, by holding that the section could not constitutionally apply to public utility condemnations, but that, in the absence of statute, it had the power to devise a method by which an allowance could be made. It devised such a procedure by providing that in this case the value of such property should be fixed as of the day of trial.

After denial of the motion, petitioner filed this petition for a writ of prohibition. In this petition it alleges, and its major argument is, that section 1249 of the Code of Civil Procedure is unconstitutional as applied to public utilities, and that

being so there is no method provided by law for allowing compensation for compulsory improvements made after the date of summons, and that the trial court had no constitutional power to devise a method for such allowance. Based on these premises, it concluded that the respondent trial court was without jurisdiction to proceed, and that the only way its properties could be condemned would be before the Public Utilities Commission under the procedure set forth in the Public Utilities Code.[3]

In addition to this major contention, petitioner in its petition for prohibition alleged other facts and made another contention not presented to or made in the trial court. From these new facts and from the argument made in support of

[3]The procedure under that code is as follows: Sections 1403 and 1404 of the Public Utilities Code allow a political subdivision to petition the Public Utilities Commission for the latter to fix the just compensation which the condemning subdivision shall pay for the described property of the utility. After hearings, the commission fixes the compensation "as of the day on which the petition was filed with the commission" (§ 1411). Thereafter an action may be filed in the superior court to litigate the right of the condemner to take the property, but the judgment in such action shall incorporate the commission's findings of just compensation, and said finding "shall not be subject to modification, alteration, reversal, or review by any court of this State" (§ 1416). But the "judgment of the court shall include a provision, in substance, that it is subject to modification by reason of such increase or decrease in the just compensation to be paid as may thereafter be certified to the court by the commission" (§ 1416). Section 1417 of that code then permits both the condemner and condemnee to petition the commission for adjustment of the finding of just compensation, and the judgment of the court is modified to incorporate the finding of net increase or net decrease in the commission's original finding of just compensation (§ 1419). "The judgment of the court, as thus modified, insofar as it refers to the just compensation to be paid for the lands, property, and rights, shall be final and shall not be subject to modification, alteration, reversal, or review by any court" (§ 1419). The filing of the petition or petitions to modify the award does not stay the condemnation judgment, and the condemner may acquire immediate possession upon "payment of the just compensation fixed in the original judgment of condemnation" (§ 1419). Thus it is possible under the Public Utilities Code procedures to adjust the award after actual takeover, and to make allowances for postjudgment expenditures. Sections 1417 and 1418 deal with the procedure involved in the supplemental proceedings. Section 1417 limits the period within which to file the petition for a supplemental (postjudgment) award to 30 days after the entry of the initial judgment. The petition is to allege the amount by which the initial judgment is to be increased "by reason of expenditures made by the owner," subsequent to the original valuation date. The hearing on that petition "shall be within 45 days after the entry of the judgment by the court." Section 1418 then provides that after that hearing "the commission shall make and file its finding fixing, as of the date on which the finding is made and filed, the extent to which the just compensation theretofore fixed should be increased"; that finding is final and not subject to review.

this new contention, it now appears that real party must pay the condemnation award from the proceeds of a bond issue, and that such bonds have not as yet been sold, and may not be sold at the time the condemnation award is entered. It thus appears that real party, prior to the commencement of the condemnation action, successfully submitted a bond proposal to the inhabitants of the district by which it received authority to issue up to $1,500,000 of revenue bonds for the purpose of acquiring a water supply system. These bonds have not as yet been sold, but there is no allegation nor contention that they are unsalable or that real party intends to refuse to sell them in time to pay the condemnation award when it is made. The contention is that at the time of judgment no money may be available to pay such judgment because the bonds may not have been then sold, and may not be sold for as much as a year after judgment. Petitioner contends that during this possible period it may be required to make improvements and additions to its water system for which the award would not compensate it. It is therefore argued that there is no statutory method provided for such compensation and that there is no feasible method by which the trial court can provide for such payment in a Code of Civil Procedure condemnation. Therefore, so it is argued, the trial court has no jurisdiction to proceed and real party must be relegated to a condemnation under the Public Utilities Code.

These allegations and arguments present the following four points:

1. Is section 1249 of the Code of Civil Procedure applicable to a public utility condemnation?

2. If not, did the trial court have the inherent power to work out a procedure, and if so, is the proposed method adequate?

3. May petitioner in prohibition raise new facts and new contentions, based on possibilities, not urged before the trial court?

4. If so, is there any possible procedure that could be adopted by the trial court that would result in an award to petitioner that would fully compensate it for its property?

First, as to the applicability of section 1249 of the Code of Civil Procedure to public utility condemnations. That section purports to fix the date of valuation for purpose of condemnation at the date of summons, and purports to prohibit any allowance of compensation for improvements

made after that date. A public utility in some respects is in a different position from a private landowner. The latter is not under compulsion to make any improvements on his privately owned property after service of summons. Such subsequent improvements, in most cases, would be of no value to the condemner, and in many cases would have been added by the owner in bad faith simply to increase the valuation. Thus, in the ordinary case, the application of such a prohibition as is found in the code section is fair, equitable, and proper.

But to apply the prohibition to a necessarily expanding public utility would be unfair, unrealistic and unconstitutional. ■ A public utility in the nature of a water company is obligated by law to maintain and extend an adequate water service to all users in the district. (Pub. Util. Code, § 451; *California Water & Tel. Co. v. Public Util. Com.,* 51 Cal.2d 478, 493 [334 P.2d 887].) ■ It is required by law, whether or not a condemnation action is pending, that the utility continue to make necessary improvements, additions and betterments to its system. Since the taking of property in eminent domain without the payment of just compensation is prohibited by our Constitution, it would be unconstitutional to take a utility's property valued as of the date of the summons and without compensating it for involuntary and compulsory improvements installed by it after such date that result in an increase of value of the system. For this reason the trial court properly held that the prohibitions in the section were not applicable to public utility condemnations. This interpretation of the section is in accord with the basic principle of statutory construction that laws should be sensibly interpreted, and that general terms in statutes will not be construed to lead to unjust or oppressive results. (*Cotton v. Superior Court,* 56 Cal.2d 459, 465 [15 Cal.Rptr. 65, 364 P.2d 241]; see *County of Los Angeles v. Riley,* 6 Cal.2d 625, 629 [59 P.2d 139, 106 A.L.R. 903].)

■ The conclusion that section 1249 cannot constitutionally apply to public utility condemnations does not mean that there is no way a trial court, in a Code of Civil Procedure condemnation, can make an award for improvements made after the date of summons. Certainly, it does not mean that any such award is prohibited in such a condemnation. It has been held that section 1249 is not inflexible and does not always apply, even in private condemnations. In *Redevelop-*

*ment Agency* v. *Maxwell,* 193 Cal.App.2d 414 [14 Cal.Rptr. 170], it was held that, in spite of the mandate of the section, if the property sought to be condemned were destroyed by fire after summons issued, that fact should be considered by the trier of fact in determination of the award. If involuntary destruction of the property after issuance of summons may be considered in diminution of an award of compensation, in spite of the language of section 1249, it follows that involuntary betterment of the property may and should be considered in assessing the award if the improvements are of use and benefit and add to the value of the property sought to be condemned. (See also *Harden* v. *Superior Court,* 44 Cal.2d 630, 635 [284 P.2d 9].)

Thus, the trial court held, and held properly, that the problem could be solved by simply devising a procedure whereby the value of petitioner's water system would be assessed as of the date of trial rather than the date of summons. Petitioner challenges the power of the trial court to so improvise. The trial court had such power. The provision of the Constitution compelling the payment of just compensation for a public taking of property (Cal. Const., art. I, § 14) is self-executing. Since this is so it has consistently been held, in inverse condemnation cases, that inherent power is reposed in the trial court to provide for the assessment of just compensation in situations not within the purview of existing statutory provisions. (*Metropolitan Water Dist.* v. *Adams,* 16 Cal.2d 676, 679-681 [107 P.2d 618] ; see also *Bacich* v. *Board of Control,* 23 Cal.2d 343, 346 [144 P.2d 818] ; *Rose* v. *State of California,* 19 Cal.2d 713, 719-721 [123 P.2d 505].) The trial court, in the instant case, was empowered to devise a procedure whereby the value of petitioner's water system could be justly and constitutionally assessed. This it did by providing that in the case of petitioner the condemned property should be assessed not as of the date of the summons, but as of the date of trial. This was a proper exercise of the inherent power of the trial court. It certainly protected petitioner for any increased value to its properties caused by involuntary improvements made after summons and up to the date of trial or of judgment. Inasmuch as the Legislature has failed to provide a procedure to cover the contingency involved, pursuant to its inherent powers the court had the power to devise a proper procedure. ■ It is beyond dispute that ''Courts have inherent power, as well as power under section 187 of the

Code of Civil Procedure,[4] to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council." (*Tide Water Assoc. Oil Co.* v. *Superior Court,* 43 Cal.2d 815, 825 [279 P.2d 35].)

But petitioner contends that even if this be true, such devised procedure does not protect it for any increased value caused by involuntary improvements that might be made between the date of judgment and the date of taking possession by real party. It can be and is argued by real party that petitioner, never having presented this point to the trial court, is in no position to raise it on this application for a writ. It is also argued, with some merit, that petitioner in its application has not set forth with sufficient certainty facts to show that the claimed damage is certain to occur. While it is certainly true that it would be unconstitutional to take the property of any condemnee without payment of just compensation under any procedure which failed to include in the award the value of improvements involuntarily made under compulsion of law after the original valuation date and up to the date possession is transferred, it is doubtful whether such right should be protected in a proceeding for prohibition where it has not been first presented to the trial court.

Prohibition, of course, is an extraordinary remedy which will lie to restrain proceedings of a judicial nature only if the petitioner can demonstrate that the inferior tribunal is acting or obviously will act without or in excess of its jurisdiction, and then only if he can demonstrate that he has no plain, speedy, and adequate remedy in the ordinary course of law. (Code Civ. Proc., §§ 1102, 1103; e.g., *Tide Water Assoc. Oil Co.* v. *Superior Court, supra,* 43 Cal.2d 815, 825;

[4]Section 187 of the Code of Civil Procedure provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

Respondent superior court is given jurisdiction to entertain an action to condemn an existing water system by the California Constitution (art. I, § 14; art. XI, § 19) and by numerous legislative enactments pursuant thereto (Code Civ. Proc., pt. 3, tit. 7; Pub. Util. Code, §§ 1421, 12703, 12771, 12801; Wat. Code, §§ 31040, 31044; Gov. Code, § 184). (See *Waterford Irr. Dist.* v. *Turlock Irr. Dist.,* 50 Cal.App. 213, 221 [194 P. 757].)

814

see generally 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, §§ 27-40, pp. 2497-2520.)

█ In the instant case, it can be and is argued that the right to prohibition has not been perfected because of petitioner's inadequate challenge to the superior court's contemplated exercise of its jurisdiction. █ "Ordinarily, a reviewing court will not grant prohibition until an objection to jurisdiction has been made *and overruled* in the lower court, since it is assumed that any valid objection properly brought to the attention of that court will prevail, and the writ will be unnecessary." (*Sayegh* v. *Superior Court*, 44 Cal.2d 814, 815 [285 P.2d 267] (and cases there cited); *Rescue Army* v. *Municipal Court*, 28 Cal.2d 460, 464-465 [171 P.2d 8]; *American Society of Composers, Authors & Publishers* v. *Superior Court*, 207 Cal.App.2d 676, 685 [24 Cal. Rptr. 772].)[5] This is a rule of practice based on courtesy to lower courts and on the desire to prevent unnecessary litigation. █ Inasmuch as it is clear that respondent superior court has jurisdiction of the parties and the subject matter and since, as will appear below, there are several possible ways by which it could have properly and adequately exercised that jurisdiction, there is every reason for here following that sound rule. (See generally 40 Cal.Jur.2d, Prohibition, § 81, pp. 255-258; 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 32, pp. 2504-2506; Note (1955) 3 U.C.L.A. L.Rev. 118.) It follows, therefore, that had the point now urged before the appellate courts been properly placed before the respondent superior court, that court could have, and we must presume would have, devised a procedure that would have fully protected petitioner's right to the compensation in question. Petitioner's failure to do so has caused extended and unwarranted litigation in this case and presents an ideal example of the reason for the rule.

█ It is necessarily the basis of petitioner's theory that the provisions of the Public Utilities Code relating to the condemnation of a public utility are exclusive. Such a theory is directly contrary to the expressed intent of the Legislature. Section 1421 of the Public Utilities Code provides that: "The procedure provided in this chapter [§§ 1401-1421, dealing with the determination of just compensation for acquisi-

---

[5]Petitioner makes no serious attempt to argue that a proper challenge was made but apparently relies on the assumption (an erroneous one) that such a showing is unnecessary because, in any event, the court could not have devised an adequate procedure.

tion of utility properties] shall be alternative and cumulative and not exclusive, and the political subdivision shall continue to have the right to pursue any other procedure providing for the acquisition under eminent domain proceedings of the lands, property, and rights of any public utility. This chapter shall not be construed as repealing any law of this State providing for such eminent domain proceedings." And section 31044 of the Water Code, which is in the division dealing with the powers of county water districts (like real party), provides: "Eminent domain proceedings may be brought by a district pursuant to the provisions of Title 7, Part 3 of the Code of Civil Procedure." Thus, to hold that the method set up in the Public Utilities Code is exclusive would do violence to the obvious intent of the Legislature, at least so long as no constitutional or other rights are violated by the procedure under the Code of Civil Procedure. (See *Rose* v. *State of California, supra,* 19 Cal.2d 713, 723.)

But, petitioner argues, had the point now under discussion been properly raised below, there is no conceivable procedure that the trial court could have devised that would protect petitioner if the contingency under discussion arises, and that being so the Code of Civil Procedure sections are not applicable, and prohibition is proper. If these premises were correct, and if the contingency envisaged by petitioner were certain to occur, there might be some merit in its position. But these premises are not correct. In the first place, it is by no means certain that the contingency will ever occur. It may well be that real party will sell its bonds prior to judgment and so be in a position to pay the full judgment when it takes possession. It may also be that, upon a proper showing prior to trial, the real party will not be in a position to pay cash and thus take possession upon entry of judgment. In that event, the trial court, acting under its inherent power, could require real party to sell its bonds as a condition precedent to setting the case for trial. Alternatively, as a condition precedent to assumption of jurisdiction, the trial court could require that real party demonstrate to the court's satisfaction its ability to pay the condemnation award upon entry of judgment or perhaps within a very short period thereafter during which period the court could enjoin the petitioner from making any additions or betterments. Here, real party asserts, and petitioner does not dispute, that the electorate has approved the issuance and sale by real party of a total of

$1,500,000 in revenue bonds; that the statute of limitations has run and would now bar an action to contest the validity of real party's authority to issue the bonds (Code Civ. Proc., § 349.2) ; that the bonds are marketable; and, that their sale can be accomplished within as little as 30 days. If the respondent superior court is not fully satisfied that this is an adequate showing of financial ability to satisfy any probable award to petitioner or of its ability to do so upon the entry of judgment then the court could refuse to entertain jurisdiction in the matter until such adequate showing is made.

Moreover, if the point is properly presented to the trial court, it could devise a procedure whereby petitioner's right to a jury trial and its right to compensation for the value of improvements between judgment and the taking of possession are fully protected. It is urged that petitioner is entitled to a jury trial on the issue of just compensation, which is correct, and that it would be impracticable for a second jury to determine the value its property is enhanced by the improvements made after judgment. This argument is premised upon the contention that such subsequent improvements must not be valued at cost but according to the amount by which their presence enhanced the fair market value of the utility system (see *Pacific Gas & Electric Co.* v. *Devlin,* 188 Cal. 33, 38 [203 P. 1058] ; *Re City of North Sacramento,* 56 Cal. P.U.C. 554, 560-562). Thus, so the argument runs, there would have to be a duplication of evidence before the second jury. Whether such a fair market analysis in evaluating the value of the improvements is constitutionally required is open to question. The Public Utilities Commission, under the Public Utilities Code condemnation, apparently uses a relatively simple cost less depreciation method to evaluate such improvements under sections 1417 and 1418 of that code. The commission is apparently of the opinion that in evaluating such improvements its constitutional duty is to keep the condemnee whole, and that such method does so (see *Re City of Redding,* 20 C.R.C. 1022).

The fact that such a procedure would require the trial court to retain jurisdiction after entry of the first judgment so as to make an allowance for the enhanced value after judgment would present no insurmountable difficulties. A trial court can retain jurisdiction in order to effect full and adequate relief (see e.g., *City of Lodi* v. *East Bay Mun. Utility Dist.,* 7 Cal.2d 316, 344, 346-347 [60 P.2d 439]) and there is relevant precedent for such a bifurcated type of proceeding

in condemnation cases (see *United States* v. *Westinghouse Elec. & Mfg. Co.*, 339 U.S. 261 [70 S.Ct. 644, 94 L.Ed. 816]; *11,000 Acres of Land etc. Tex.* v. *United States*, 152 F.2d 566; *United States* v. *Certain Parcels of Land etc. Md.* (D. Md.) 55 F.Supp. 257, 263; *In re Condemnation of Lands for Military Camp* (E.D.Ark.) 250 F.314;[6] see also *City of Houston* v. *Culmore*, 154 Tex. 376 [278 S.W.2d 825] [initial trial to determine value of entire property; second trial to determine ownership and severance damages]; and see Note 68 A.L.R.2d 392, 400-401, 407-408, and cases there collected). "Fair market value" is not the exclusive standard by which to measure just compensation, and it is widely recognized that such a standard is meaningless when, as here, a public utility is being condemned. (*United States* v. *Cors*, 337 U.S. 325, 332 [69 S.Ct. 1086, 93 L.Ed. 1392]; *Natural Soda Prod. Co.* v. *City of Los Angeles*, 23 Cal.2d 193, 201 [143 P.2d 12]; *Basin Oil Co.* v. *Baash-Ross Tool Co.*, 125 Cal.App.2d 578, 606 [271 P.2d 122]; *Frustuck* v. *City of Fairfax*, 212 Cal.App. 2d 345, 367-368 [28 Cal.Rptr. 357] (and cases there cited); and see generally 3 Nichols on Eminent Domain (3d ed. 1950) § 8.6, pp. 28-31; 1 Orgel on Valuation under Eminent Domain (2d ed. 1953) §§ 37-38, pp. 172-179; Kratovil and Harrison, *Eminent Domain—Policy and Concept* (1954) 42 Cal.L.Rev. 596; Note, *supra*, 68 A.L.R.2d 392, 398-400.) Thus a "cost-less-depreciation" valuation, like that used by the Public Utilities Commission, would certainly fully compensate the condemnee for any post valuation date expenditures it is required to make, and that standard can be as easily applied by a jury as by a judge or by the commission.

Thus it is not only reasonably probable that the contingency envisaged by petitioner will never occur, but even if it does occur there are reasonable procedures open to the trial court

---

[6]The federal cases cited involved the federal government's exercise of its emergency power under special wartime legislation to condemn leasehold interests for a fixed period with an option to continue in possession from year to year for an indeterminate period thereafter. The exercise of the options caused valuation problems which were solved by the trial court retaining jurisdiction after making the initial award and increasing the award if the options were exercised. None of the cases cited expressly hold that a jury will be involved in the second valuation proceeding as the issue was never presented to those courts but it is apparent, at least in some of the cases, that a second jury trial was anticipated.

Petitioner is correct that all of these cases can be distinguished in some way but petitioner makes no showing that there is any contrary authority and can make no sound argument against the proposed procedure other than that there is no precedent directly on point.

by which all of petitioner's rights may be protected in a Code of Civil Procedure condemnation.

For these reasons the alternative writ heretofore issued is discharged and the peremptory writ of prohibition prayed for is denied.

Gibson, C.J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.

Petitioner's application for a rehearing was denied July 10, 1963.