[Civ. No. 37153. Second Dist., Div. Three. Nov. 24, 1971.]

CITY OF SANTA BARBARA, Plaintiff and Respondent, v.
AGNES V. PETRAS· et al., Defendants and Appellants.

COUNSEL

Wilcox & Gordon, Thorpe, Sullivan, Clinnin & Workman, Roger M.
Sullivan and Henry K. Workman for Defendants and Appellants.

Stanley T. Tomlinson, City Attorney, David T. Hayden and A. Barry
Capello for Plaintiff and Respondent.

OPINION

**COBEY, Acting P. J.**—The property owners, Petras et al., appeal from a judgment in condemnation in the amount of $175,000. The sole question is whether the trial court was correct in excluding from evidence the fact that the lease on the property obligated the lessee, the Bank of America,[1] to remodel extensively the building on the property.

---

[1] The full name of the bank is Bank of America National Trust and Savings Association.

The trial court based its ruling upon the last sentence of Code of Civil Procedure, section 1249 which, since 1872, has read: "No improvements put upon the property subsequent to the date of the service of summons shall be included in the assessment of compensation or damages." In so ruling the court committed prejudicial error and we reverse.

## FACTS

Early in September 1966 John Petras told his lawyer, John T. Rickard, that the Bank of America was interested in leasing Petras' downtown business locations at 914 and 916 State Street, Santa Barbara as a temporary location for its downtown headquarters pending the construction of its new headquarters. At the time this property was under lease to two commercial concerns for a total monthly rental of $1,300. Petras explained that the negotiations between himself and the bank's representatives had been going on for some months. In view of the fact that there had been some public discussion of the possibility of the City of Santa Barbara condemning this property for off-street public parking facilities, Rickard advised Petras that he should have the property appraised for condemnation purposes. This, however, was not done at that time.

On September 20, 1966 the city distributed an engineering report containing an off-street parking plan under which the Petras property would be used in its entirety. About six weeks later Rickard received a letter from the Bank of America representative proposing that the property be leased to the bank, effective November 1, 1966, for 30 months with an option to the bank of renewal for one year. Possession would not be delivered until February 1, 1967 and in addition to a monthly cash rental of $1,500, the bank would remodel the building extensively for its own use. The proposal was generally acceptable to the Petrases. On November 11, 1966 the bank's representative sent Rickard a draft of the proposed lease. Rickard, with the approval of his clients, proposed certain changes which the bank accepted. The lease was executed by its parties during the closing days of November 1966. During the negotiations that led to the lease the bank's representative was aware of the city's then plan to condemn the Petras property.

Meanwhile on November 15, 1966 the city council adopted a resolution sending this plan back to the off-street parking commission for review. Some four months later, however, the council adopted a resolution of preliminary determination under which the entire Petras property would be condemned. On April 6, 1967 Rickard attended a conference at the bank with representatives of the bank and representatives of the city. There the question of the effect of Code of Civil Procedure, section 1249

was the principal subject of discussion. Rickard tried unsuccessfully to persuade the city officials to defer condemnation of the Petras property until the lease with the Bank of America expired. Within a week thereafter the city council formally adopted the plan proposed in the just mentioned resolution of preliminary determination.

The bank nevertheless went forward with its plan to remodel the Petras building pursuant to the lease. It sent out invitations for bids and the successful bidder started preliminary work on May 16, 1967.[2] The next day the city filed its complaint in eminent domain and caused summons to be issued. Summons was served on the defendants the following day, May 18, 1967. The bank, however, was not made a party to the action and was never served. It completed its remodeling of the Petras building prior to the trial of the action and occupied the building for the full term of the lease and for the renewal period as well.

The case came to trial on March 28, 1969. The lease was offered in evidence. It was admitted in its entirety except for the portion requiring the bank to improve the property. An expert valuation witness for the property owners testified before the court preliminarily in the absence of the jury that the fair market value of the property as of March 28, 1969 was $323,000 in view of the existence of the lease and particularly the bank's obligation thereunder to remodel the building. The remodeling cost the bank approximately $160,000 and this cost, when capitalized, according to the witness, brought the total rent under the lease up to a figure quite comparable with rentals of similar buildings for institutional use in downtown Santa Barbara. The witness was of the opinion that the remodeled building itself had a fair market value as of March 28, 1969 of $330,000. He ascribed the closeness in his valuations as due to the reliability of the Bank of America to honor its obligation to remodel. The court refused to allow the jury to hear this valuation testimony. The jury was then dismissed pursuant to stipulation between counsel.

█ █ █ █. The property owners then applied to this court for appropriate extraordinary relief (2 Civ. 34692). This was denied, without opinion, on June 19, 1969 by another division and on July 16, 1969 the Supreme Court denied hearing in the writ proceedings.[3] Trial of the case

---

[2]This work between May 16 and 18 consisted of setting up a preliminary office, constructing a barricade on State Street, ordering telephone and water service and proceeding with demolition.

[3]Since the granting of extraordinary relief in writ proceedings such as these is discretionary, the action of neither court was res judicata on the issue before us. (See Witkin, Cal. Procedure (1st ed. 1954) Extraordinary Writs, § 58, p. 2550 (1967 Supp., p. 1060).)

was resumed on September 23, 1969 with argument between counsel on the point at issue before us. At the conclusion of the argument the court refused to change its ruling as to the extent of the admissibility of the lease. The property owners then stipulated to a judgment of $175,000 and reserved their right to appeal from the judgment. This was then done.

## DISCUSSION

The trial court erred prejudicially in refusing to admit *in its entirety* the lease on the Petras property. Under the proviso in the first sentence of Code of Civil Procedure, section 1249, since the case was not brought to trial within one year after the date of the commencement of the action (May 17, 1967) and such delay was not caused by defendant property owners, the compensation and damages to be awarded them accrued as of the date of trial (March 28, 1969). (See *People* v. *Murata*, 55 Cal.2d 1, 8 [9 Cal.Rptr. 601, 357 P.2d 833].) As of this date of value, the lease had long been in effect and the remodeling had been done.

As this court pointed out in *People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.*, 253 Cal.App.2d 870, 879-880 [62 Cal.Rptr. 320], hearing denied, all condemnation law, procedure and practice is but a means to the constitutional end of just compensation to the involuntary seller, the property owner. With this in mind we turn to the part of the Evidence Code relating to eminent domain proceedings. Section 814 provides that the opinion of a valuation witness may be based, among other things, on matter which a willing purchaser and a willing seller, dealing with each other in the open market and with a full knowledge of the uses and purposes for which the property is reasonably adaptable and available, would take into consideration in determining the price at which to purchase and sell the property being valued, unless the witness is precluded by law from using such matter as a basis for his opinion. The opening sentence of section 817 states in relevant part: "When relevant to the determination of the value of property, a witness may take into account as a basis for his opinion [of value] the rent reserved and other terms and circumstances of any lease which included the property . . . being valued . . . which was in effect within a reasonable time before . . . the date of valuation." Section 819 in relevant part reads: "When relevant to the determination of the value of property, a witness may take into account as a basis for his opinion the capitalized value of the reasonable net rental value attributable to the land and existing improvements thereon. . . ."

In this case the property owners' valuation witness followed the foregoing relevant portions of Evidence Code, sections 814, 817 and 819 in arriving at his opinion of the fair market value of the Petras property on March 28, 1969. In other words he took into account the existence of the lease, which had gone into effect months before the commencement of the condemnation action and particularly its full rent, which was the cash rent plus the capitalized value of the improvements to the building made by the lessee pursuant to the lease, and leases of comparable property. (See Evid. Code, § 818; *People* v. *Dunn,* 46 Cal.2d 639, 641-642 [297 P.2d 964]; *People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc., supra,* 253 Cal.App.2d 870, 884; cf. *Redevelopment Agency* v. *Maxwell,* 193 Cal. App.2d 414, 418-419 [14 Cal.Rptr. 170, 89 A.L.R.2d 1070], hg. den.)

The city contends that the witness was precluded by law from considering in this manner the value of the improvements to the building made by the lessee pursuant to the lease because they had been put on the property after the date of service of summons (May 18, 1967). Such a literal application of the prohibition set out in the last sentence of section 1249, quoted at the outset of this opinion, ignores the purpose of the prohibition. Improvements to the property to be condemned made subsequent to notice to the property owner, via summons, of the condemnation action are obviously made in bad faith to increase the price the condemner must pay for the property. It is therefore fair, equitable and proper to prohibit such bad faith conduct. (See *Citizens Utilities Co.* v. *Superior Court,* 59 Cal.2d 805, 811 [31 Cal.Rptr. 316, 382 P.2d 356].)

This is not the situation here. It is true that the improvements the bank made upon the property were made after service of summons in the condemnation action. But they were made pursuant to an obligation to do so contained in a lease executed months before the commencement of the condemnation action. They were not made in bad faith but instead were made in compliance with a preexisting contractual obligation.[4] Under these circumstances the lease should be received in evidence in its entirety and all of its terms and circumstances should be considered at arriving at the fair market value of the Petras property on March 28, 1969. ■ A condemner must take the property condemned in the condition in which it is on the date of value. (*People* ex rel. *Dept. Pub. Wks.* v.

---

[4]The bank, having enjoyed its leasehold to the end of its term, without being interfered with in any manner by the condemner, has suffered no loss by reason of the condemnation. (See *People* ex rel. *Dept. of Public Works* v. *Hartley,* 214 Cal.App.2d 378, 381 [29 Cal.Rptr. 502]; *Flood Control District* v. *Andrews,* 52 Cal.App. 788, 793-794 [205 P. 1085].)

*Lynbar, Inc., supra,* 253 Cal.App.2d 870, 884.) To hold otherwise under the circumstances present in this case would be to violate the fundamental constitutional principle of just compensation.

The judgment is reversed for further proceedings consistent with the views expressed in this opinion.

Schweitzer, J., and Allport, J., concurred.

A petition for a rehearing was denied December 21, 1971, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied January 19, 1972.