[No. E033862. Fourth Dist., Div. Two. Mar. 26, 2004.]

MT. SAN JACINTO COMMUNITY COLLEGE DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF THE COUNTY OF RIVERSIDE,
Respondent;
AZUSA PACIFIC UNIVERSITY, Real Party in Interest.

## COUNSEL

Redwine and Sherrill, Justin M. McCarthy and David F. Hubbard for Petitioner.

No appearance by Respondent.

Brown, Winfield & Canzoneri, Edward J. Szczepkowski and Michael H. Wallenstein for Real Party in Interest.

## OPINION

**KING, J.—**

### INTRODUCTION

Code of Civil Procedure section 1263.240[1] provides that improvements to real property made after summons is served in an eminent domain proceeding "shall not be taken into account in determining compensation unless . . . [¶] . . . [¶] (c) The improvement is one authorized to be made by a court order issued

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

after a noticed hearing and upon a finding by the court that the hardship to the defendant of not permitting the improvement outweighs the hardship to the plaintiff of permitting the improvement. . . ."

The question here is whether a property owner, who makes improvements to its property after it was served with summons in an eminent domain action, and who fails to seek advance court approval of the improvements in the eminent domain action under section 1263.240, subdivision (c), may sue the condemning public entity in inverse condemnation for the value of the improvements. Under the circumstances of this case, we hold that the answer is no.

### FACTS AND PROCEDURAL HISTORY

In October 2000, Mt. San Jacinto Community College District (Mt. San Jacinto) filed and served a complaint in eminent domain against Azusa Pacific University, a private educational corporation (Azusa Pacific), seeking to condemn approximately 30 acres of vacant land in the Menifee area of Riverside County. Azusa Pacific purchased the property in February 2000, and by October 2000 was planning to build educational facilities on the property.

On December 15, 2000, Mt. San Jacinto deposited "probable compensation" for the property. (§ 1255.020.) In May 2001, Azusa Pacific began constructing the educational facilities on the property. In October 2001, Mt. San Jacinto sought possession of the property. (§ 1255.410.) By that time, construction of the improvements was up to 76 percent complete. Mt. San Jacinto was granted possession, but the order of possession was stayed pending completion of the improvements. The improvements were completed in January 2002, and Mt. San Jacinto then took possession.

After a court trial in June 2002, the trial court ruled that Mt. San Jacinto had a right to take the property. As trial on the bifurcated issue of compensation approached, Mt. San Jacinto filed a motion in limine to prohibit Azusa Pacific from introducing any evidence of the value of the improvements. The motion was granted.[2] Azusa Pacific then promptly filed an inverse condemnation action against Mt. San Jacinto, seeking the value of the postsummons improvements.

In the inverse condemnation action, Mt. San Jacinto moved for summary judgment on the grounds (1) it neither took nor damaged the postsummons improvements, and (2) the improvements were not compensable, because Azusa Pacific failed to avail itself of its "exclusive remedy" under section 1263.240 in the eminent domain action. The trial court denied the motion, citing as triable issues of material fact whether Mt. San Jacinto had taken the

---

[2] During oral argument on the motion, counsel for Mt. San Jacinto acknowledged that Azusa Pacific might bring an action in inverse condemnation if it could not seek compensation for the improvements in the condemnation proceeding. Counsel further added that he did not think an inverse condemnation action would be successful.

improvements, and, if so, their valuation date.[3] Mt. San Jacinto then petitioned this court for a writ of mandate directing the trial court to grant the motion.[4]

## DISCUSSION

### A. *Procedural Matters*

Initially, we dispose of two procedural objections raised by Azusa Pacific. First, Azusa Pacific argues that extraordinary relief is not necessary because Mt. San Jacinto will have an adequate remedy at law by way of appeal after judgment. Here, however, we issued an alternative writ, which operates as a conclusive finding that the remedy at law is *not* adequate. (See *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Courtesy Ambulance Service v. Superior Court* (1992) 8 Cal.App.4th 1504, 1510 [11 Cal.Rptr.2d 161].) Second, Azusa Pacific notes that at the time the petition was filed, the trial court had not yet signed a written order denying the motion for summary judgment. Such an order was later filed, however, and the record is sufficient to permit review. (Cal. Rules of Court, rule 56(c); *Sherwood v. Superior Court* (1979) 24 Cal.3d 183, 186–187 [154 Cal.Rptr. 917, 593 P.2d 862]; *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1756 [46 Cal.Rptr.2d 191].)

### B. *Standard of Review*

■ Azusa Pacific argues that the trial court's order denying Mt. San Jacinto's motion for summary judgment should be reviewed under the "abuse of discretion" standard. This is incorrect. An order granting or denying summary judgment is reviewed de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) Accordingly, we independently review whether the trial court erred in denying the motion.

### C. *Eminent Domain and Inverse Condemnation*

The power of eminent domain, or the forcible taking of private property for public use, is "an inherent attribute of sovereignty." (*People v. Chevalier* (1959) 52 Cal.2d 299, 304 [340 P.2d 598].) The federal and state Constitutions place limits on a sovereign entity's exercise of this power by requiring

---

[3] Both the eminent domain action and inverse condemnation action were assigned to the same trial judge.

[4] Azusa Pacific has requested that we take judicial notice of certain portions of the legislative history of section 1263.240, and portions of the record in both the eminent domain and inverse condemnation actions. We hereby grant these requests. (Evid. Code, §§ 452, 453 & 459.)

that the taking be for a "public use" and that "just compensation" be paid. (*Ibid.*; *Saratoga Fire Protection Dist. v. Hackett* (2002) 97 Cal.App.4th 895, 900 [118 Cal.Rptr.2d 696] (*Saratoga Fire Protection Dist.*).)

" '[T]he just compensation to which the owner is constitutionally entitled is the *full and perfect* equivalent of the property taken. [Citation.]' " (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 796–797 [214 Cal.Rptr. 904, 700 P.2d 794].) And because just compensation is a constitutional requirement, it " 'cannot be made to depend upon state statutory provisions.' " (*Id.* at p. 797; accord, *Community Redevelopment Agency v. Force Electronics* (1997) 55 Cal.App.4th 622, 633 [64 Cal.Rptr.2d 209].)

In both eminent domain and inverse condemnation proceedings, the issue of just compensation is to be tried before a jury. (*Marshall v. Department of Water & Power* (1990) 219 Cal.App.3d 1124, 1138–1139 [268 Cal.Rptr. 559]; see also *Orpheum Bldg. Co. v. San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863, 868 [146 Cal.Rptr. 5].) "All other questions of fact, or of mixed fact and law, are to be tried . . . without reference to a jury." (*People v. Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799]; *Pacific Gas & E. Co. v. Peterson* (1969) 270 Cal.App.2d 434, 438 [75 Cal.Rptr. 673].) "Consistent with this rule, the court, rather than the jury, typically decides questions concerning the *preconditions to recovery* of a particular type of compensation, even if the determination turns on contested issues of fact." (*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1116 [125 Cal.Rptr.2d 12], italics added.)

The California Legislature set forth rules governing eminent domain proceedings in section 1230.010 et seq. (the Eminent Domain Law). These rules provide that the valuation date of property taken is: (1) the date the action is commenced if the issue of compensation is brought to trial within one year (§ 1263.120); (2) the date "probable compensation" is deposited in court, unless an earlier valuation date applies (§ 1263.110); or (3) the date trial is commenced, if the issue of compensation is not brought to trial within one year, unless the defendant caused the delay, in which case the valuation date is the date the action was commenced (§ 1263.130).

Within this framework, section 1263.240 provides that postsummons improvements *shall not* be taken into account in determining compensation, unless one of the exceptions set forth in subdivisions (a) through (c) is established. Subdivision (a), a narrow exception, applies where the improvements are "required to be made by a public utility to its utility system." Subdivision (b) applies where the condemner has consented in writing to the improvements. And subdivision (c) allows postsummons improvements to be taken into account where the owner has, by noticed motion, obtained advance court approval for the improvements.

More specifically, subdivision (c) provides that the trial court may authorize the improvements if it finds "that the hardship to the defendant of not permitting the improvement outweighs the hardship to the plaintiff of permitting the improvement." And at the time the trial court authorizes an improvement, it may also "limit the extent to which the improvement shall be taken into account in determining compensation." (§ 1263.240, subd. (c).)

The Legislative Committee comment to section 1263.240 notes that subdivision (c) "is intended to provide the defendant with the opprotunity [*sic*] to make improvements that are *demonstrably in good faith* and not made to enhance the amount of compensation payable. The subsequent improvements might be compensable under the balancing of hardship test, for example, where an improvement is near completion, the date of public use of the property is distant, and the additional work will permit profitable use of the property during the period prior to the time it is actually taken for public use." (Legis. Com. com., 19A West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1263.240, p. 32.)

Here, Azusa Pacific began building educational facilities on the property after it was served with summons in the eminent domain action, and without obtaining court authorization for the improvements under section 1263.240, subdivision (c). Then, after evidence of the value of the postsummons improvements was excluded for purposes of trial on the issue of compensation in the eminent domain action, Azusa Pacific filed an inverse condemnation action seeking to recover the value of the same improvements. As we explain, Azusa Pacific may not recover in its inverse condemnation action what it failed to properly pursue in the preceding eminent domain action.

■ Eminent domain and inverse condemnation actions are distinguished primarily by who initiates the action. Eminent domain actions are initiated by an authorized public entity and are governed by the Eminent Domain Law. (§ 1263.010 et seq.) Where, however, property is taken other than by formal condemnation, the property owner may initiate an action for inverse condemnation. (See *Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722, 737–738 [122 Cal.Rptr.2d 38].) The law of inverse condemnation is not governed by the Eminent Domain Law, but has been " 'left for determination by judicial development.' " (*Chhour v. Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 279 [53 Cal.Rptr.2d 585].)

In both types of proceedings, the owner is entitled to just compensation. Indeed, "condemnation and inverse condemnation . . . are merely different manifestations of the same governmental power, with correlative duties imposed upon public entities by the same constitutional provisions . . . ." (*City of Oakland v. Oakland Raiders* (1982) 32 Cal.3d 60, 67–68 [183 Cal.Rptr.

673, 646 P.2d 835].) " 'The principles which affect the parties' rights in an inverse condemnation suit are the same as those in an eminent domain action. [Citations.]' [Citation.]" (*Marshall v. Department of Water & Power, supra,* 219 Cal.App.3d at p. 1138.)

It has been said that there are "important legal and practical distinctions" between eminent domain and inverse condemnation actions. (*Leaf v. City of San Mateo* (1984) 150 Cal.App.3d 1184, 1190 [198 Cal.Rptr. 447] (*Leaf*), overruled on another ground in *Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259].) But such distinctions should not yield different results in terms of compensation. " '[A]ll condemnation law, procedure and practice[] is but a means to the constitutional end of just compensation to the involuntary seller, the property owner.' [Citation.]" (*People ex rel. Dept. of Transportation v. Southern Cal. Edison Co.* (2000) 22 Cal.4th 791, 800 [94 Cal.Rptr.2d 609, 996 P.2d 711].) Just compensation to the property owner is the overriding principal to be applied in both types of proceedings.

In an eminent domain action, a taking is generally deemed to have occurred when suit is initiated, and compensation is generally based on the current value of the land. (See *Leaf, supra,* 150 Cal.App.3d at pp. 1190–1191; §§ 1263.120 & 1263.130.) But in an inverse condemnation action, "the established rule is that the time of taking is the *time of the invasion*, and it is that event which gives rise to the claim for compensation and fixes the date of valuation." (*Leaf, supra,* at p. 1191.) And, where the property has increased in value after the time of the invasion, courts have held that a later valuation date applies, provided the property owner is not at fault or "culpable" for failing to diligently pursue its available remedies. (*Ibid.,* citing *Pierpont Inn, Inc. v. State of California* (1969) 70 Cal.2d 282, 296–298 [74 Cal.Rptr. 521, 449 P.2d 737]; accord, *Los Osos Valley Associates v. City of San Luis Obispo* (1994) 30 Cal.App.4th 1670, 1683 [36 Cal.Rptr.2d 758].)

Here, a taking of the entire 30-acre property initially occurred in October 2000, when Mt. San Jacinto filed and served its suit in eminent domain. At that time, there were no improvements on the property; construction did not begin until May 2001. Moreover, Azusa Pacific built the improvements without pursuing its available remedy of obtaining advance court approval for the improvements under section 1263.240, subdivision (c). Having failed to pursue its available remedy, Azusa Pacific cannot now demonstrate that it made the improvements in good faith. Had Azusa Pacific filed a timely motion under section 1263.240, subdivision (c), in the eminent domain action, it would have had the opportunity to demonstrate the good faith nature of the improvements it desired to make, and the trial court would have ruled on whether the intended improvements would have been compensable.

Accordingly, the trial court correctly ruled that Azusa Pacific could not introduce evidence of the value of the postsummons improvements at the jury trial on the issue of compensation in the eminent domain action. It follows that Azusa Pacific may not seek compensation for the same improvements in the subsequent inverse condemnation action. Compensating Azusa Pacific for any portion of the improvements in the inverse condemnation action would directly contravene the trial court's ruling in the eminent domain action, frustrate the purposes of section 1263.240, subdivision (c), and allow Azusa Pacific to circumvent the Eminent Domain Law.

Indeed, even under the judicially established rules of inverse condemnation, Azusa Pacific may not recover the value of the improvements, because it was at fault for not diligently pursuing its available remedy under section 1263.240, subdivision (c). (*Leaf, supra,* 150 Cal.App.3d at p. 1191.) It is untenable for Azusa Pacific to assert, as it does here, that a separate taking of the improvements occurred for purposes of the inverse condemnation action at the time Mt. San Jacinto took possession of the property in January 2002. It is equally untenable for Azusa Pacific to assert that the valuation date of the improvements, but not the land, is January 2002. A property owner's construction of improvements, in violation of section 1263.240, subdivision (c), is not a basis for establishing a separate taking and valuation date in a subsequent, inverse condemnation action. Mt. San Jacinto was thus entitled to summary judgment on Azusa Pacific's complaint in inverse condemnation.

Our conclusion is buttressed by examining the history and application of section 1263.240's general rule prohibiting compensation for postsummons improvements, and its exceptions. Where compensation for postsummons improvements has been allowed, a showing of good faith or a lack of culpability on the part of the condemnee has been required. The same principle should apply in inverse condemnation actions, where the property owner makes improvements after the taking has effectively occurred.

The predecessor to section 1263.240, section 1249, was repealed in 1975. Former section 1249 flatly prohibited compensation for postsummons improvements, without exception. But in *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805 [31 Cal.Rptr. 316, 382 P.2d 356] (*Citizens Utilities*) our state Supreme Court carved out an exception to the statute, by holding that section 1249 could not be constitutionally applied to a water utility which was obligated by law to make improvements to its system, even after it was served with summons in a condemnation action. (*Citizens Utilities, supra,* at pp. 810–811.) Accordingly, the utility was allowed to seek compensation for

its postsummons improvements. (*Id.* at pp. 811–812.) Subdivision (a) of section 1263.240, enacted in 1975, codifies the holding of *Citizens Utilities*. (Legis. Com. com., 19A West's Ann. Code Civ. Proc., *supra*, foll. § 1263.240, p. 31.)

The *Citizens Utilities* court described the utility's improvements as "involuntary," and noted that a public utility is "in some respects . . . in a different position from a private landowner. The latter is not under compulsion to make any improvements on his privately owned property after service of summons. Such subsequent improvements, in most cases, would be of no value to the condemner, and in many cases would have been added by the owner in bad faith simply to increase the valuation. Thus, in the ordinary case, the application of such a prohibition as is found in the code section is fair, equitable, and proper." (*Citizens Utilities, supra,* 59 Cal.2d at p. 811.) Plainly, the improvements in *Citizens Utilities* were not made in bad faith, or for the purpose of increasing the value of the condemned property for compensation purposes.

Similarly, the court in *City of Santa Barbara v. Petras* (1971) 21 Cal.App.3d 506 [98 Cal.Rptr. 635] (*Petras*) departed from the statutory rules to ensure just compensation. There, a property owner leased property to the Bank of America before condemnation proceedings began. Pursuant to the lease, the Bank was obligated to make certain improvements, and made the improvements after condemnation proceedings began. (*Id.* at pp. 508–509.) The trial court excluded evidence of the value of the improvements under former section 1249. (*Petras, supra,* at pp. 509–510.) The *Petras* court held that the evidence should have been admitted, reasoning that the improvements were "made pursuant to an obligation . . . contained in a lease executed months before the commencement of the condemnation action. *They were not made in bad faith* but instead were made in compliance with a preexisting contractual obligation." (*Id.* at p. 511, italics added.)

The overriding principle of just compensation was also applied in the more recent case of *Saratoga Fire Protection Dist.* There, the statutory valuation date was the date the complaint was filed (§ 1263.120), but there was evidence that the property had substantially appreciated in market value by the time of trial, less than one year later. (*Saratoga Fire Protection Dist., supra,* 97 Cal.App.4th at p. 898.) The trial court excluded evidence of the market value appreciation at trial (*ibid.*), but the appellate court reversed. The appellate court noted that earlier cases had established that the rules should not be interpreted to give either party a "windfall," and held that the defendant should have been allowed to present evidence of his property's increased market value. (*Id.* at pp. 905–906.) In so holding, the court was careful to note that "[t]*here was no indication that the increase in value of*

*defendant's property was due to bad faith improvements by defendant* or to elements of value that the government created." (*Id.* at p. 906, italics added.)

Here, the trial court was persuaded by *Saratoga Fire Protection Dist.* that Azusa Pacific was entitled to seek compensation for its postsummons improvements. We are not. *Saratoga Fire Protection Dist.* involved postsummons market value appreciation, not postsummons improvements. And, in holding that the defendant was entitled to seek compensation for the market value appreciation, the court was careful to note that there was no evidence that the appreciation was due to "bad faith improvements" on the part of the defendant. (*Saratoga Fire Protection Dist., supra,* 97 Cal.App.4th at p. 906.)

Azusa Pacific's reliance on *Citizens Utilities* and *Petras* is similarly misplaced, because these cases predate the enactment of section 1263.240, subdivision (c). Here, however, subdivision (c) was in effect when Azusa Pacific made its postsummons improvements; Azusa Pacific merely chose to disregard its provisions. Azusa Pacific nevertheless asserts that just compensation requires that it be compensated for its postsummons improvements. We disagree.

Although cases from *Citizens Utilities* to *Saratoga Fire Protection Dist.* have established that a property owner's right to just compensation cannot be defeated by the rigid application of rules, judicial or statutory, it is important to note that the *Citizens Utilities* court approved the general ban on compensation for postsummons improvements "in the ordinary case" as "fair, equitable, and proper." (*Citizens Utilities, supra,* 59 Cal.2d at p. 811.) Section 1263.240, subdivision (c), represents a conscientious legislative effort to provide for the extraordinary case—where just compensation may require compensation for postsummons improvements. As stated in the Legislative Committee comment to section 1263.240, "Subdivision (c) *is intended to* provide the defendant with the opprotunity [*sic*] to make improvements that are *demonstrably in good faith* and not made to enhance the amount of compensation payable." (Legis. Com. com., 19A West's Ann. Code Civ. Proc., *supra,* foll. § 1263.240, p. 32, italics added.)

■ The issue posed by this case is not whether Azusa Pacific is being threatened with an unconstitutional deprivation of property without just compensation. Rather, it is whether a landowner may deliberately forgo the legislative remedy which safeguards its right to just compensation, construct improvements without the condemner's consent or judicial approval, and *still* demand compensation through an inverse condemnation action. As we have explained, we think the answer must be "no."

This case presents the undesirable situation contemplated in *Citizens Utilities*, with Azusa Pacific attempting to force Mt. San Jacinto to buy improvements it does not want and, in the process, to pay substantially more for the property than it originally contemplated. Indeed, it is not difficult to conceive of the situation in which a public entity, faced with the surprising obligation to pay for massive after-constructed improvements, would be compelled to abandon a project. (§ 1268.510.) Of course, it can be argued that the public entity's power to abandon protects it from such improper maneuverings. (Cf. *Los Angeles Unified School Dist. v. Trump Wilshire Associates* (1996) 42 Cal.App.4th 1682, 1688 [50 Cal.Rptr.2d 229] [where the condemner elected to abandon a condemnation project when the real estate market deteriorated and it became unable to obtain financing].) But this is not a satisfactory alternative if the public entity wants and needs a specific parcel. Mt. San Jacinto does not want to take its money elsewhere. It wants this parcel.

It is also true that if Azusa Pacific *had* followed the statutory procedure, Mt. San Jacinto might nevertheless have been subject to paying for the new construction. But this does not mean that Azusa Pacific can obtain the same result (or a better one) through inverse condemnation. Had Azusa Pacific filed a timely motion under section 1263.240, subdivision (c), it would have had the opportunity to explain the good faith nature of the improvements and allowed the court the opportunity to balance the respective hardships. Negotiations might have resulted in modifications to the improvements, either reducing their extent (and cost) or even producing buildings which would be of use to Mt. San Jacinto once the condemnation and transfer of the property was complete.[5]

Moreover, it would be fundamentally unfair to permit a landowner to ignore the statutory procedure and demand compensation for improvements as a fait accompli, perhaps even years after the commencement of the condemnation action and at great prejudice to the public entity. As *Citizens Utilities* teaches, there is nothing wrong with a rule which protects a public entity from having to buy buildings it does not want if there is no compelling good faith reason for the property owner to build them after summons is served. Inverse condemnation simply cannot be used to circumvent the statutory rule against compensation for postsummons improvements. If Azusa Pacific's arguments were to prevail, nothing would prevent a landowner from erecting whatever improvements it liked after condemnation proceedings began, whether in good or bad faith, and then claim there was a compensable "taking" through inverse condemnation.

---

[5] Mt. San Jacinto asserts in its supplemental briefing that the location and quality of the improvements are inconsistent with its needs, and that it will probably be compelled, at best, to have them demolished—doubtless at no little expense.

■ It is a well-established principle of inverse condemnation law that a landowner whose property is threatened with damage from a public use or improvement has not only the right, but an affirmative *duty*, to mitigate the damage and *minimize* any losses. As the court stated in the seminal case of *Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 269 [42 Cal.Rptr. 89, 398 P.2d 129], "an owner whose property is being taken or damaged by a public entity is under a duty to take all reasonable steps available to minimize his loss." (See also *CUNA Mutual Life Ins. Co. v. Los Angeles County Metropolitan Transportation Authority* (2003) 108 Cal.App.4th 382, 392–393 [133 Cal.Rptr.2d 470].) Here, Azusa Pacific attempted to *maximize* its losses by voluntarily spending funds to construct improvements after being put on notice of Mt. San Jacinto's intent to take the property, and without proceeding under section 1263.240. Accordingly, Azusa Pacific's demand for compensation cannot succeed. We are convinced that California precedent requires this result, and that it is not in conflict with the constitutional requirement of just compensation.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of Riverside County to set aside its order denying Mt. San Jacinto's motion for summary judgment on Azusa Pacific's complaint in inverse condemnation and enter an order granting the motion.

Mt. San Jacinto is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

McKinster, Acting P. J., and Gaut, J., concurred.

A petition for a rehearing was denied April 22, 2004, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied July 21, 2004.