# IN THE SUPREME COURT OF CALIFORNIA

EVAN WEISS et al.,

Plaintiffs and Appellants,

v.

THE PEOPLE ex rel. DEPARTMENT OF
TRANSPORTATION et al.,

Defendants and Respondents.

S248141

Fourth Appellate District, Division Three
G052735

Orange County Superior Court
30-2012-00605637

July 16, 2020

Justice Groban authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu,
Cuéllar, and Kruger concurred.

WEISS v. PEOPLE ex rel. DEPARTMENT OF
TRANSPORTATION

S248141

Opinion of the Court by Groban, J.

Code of Civil Procedure section 1260.040[1] authorizes a pretrial motion for a ruling on "an evidentiary or other legal issue affecting the determination of compensation." (*Id.*, subd. (a).) This motion is one of the special procedures set out in the Eminent Domain Law. (§§ 1230.010–1273.050.) The public entity[2] defendants in this inverse condemnation action ask us to "judicially import" section 1260.040 into inverse condemnation procedure. We deny this request. The special statutory procedures that govern a public entity's exercise of the power of eminent domain are inapplicable in inverse condemnation actions, which instead proceed by the rules governing ordinary civil actions. We usually leave the adoption and amendment of statewide rules governing the conduct of trial court proceedings to the Legislature or the Judicial Council, and we see no reason to depart from our usual practice in this context.

A trial court may, in certain circumstances, devise or borrow a procedure appropriate to the specific litigation before it. But it may not do so when an applicable procedure is

---

[1]    Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

[2]    We use "public entity" as shorthand: Certain "quasi-public entities" are authorized by statute to utilize the eminent domain power as well. (§§ 1240.040, 1245.320, 1245.326.)

1

WEISS v. PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION

Opinion of the Court by Groban, J.

provided by a statute or rule of court. In this action, the public entities borrowed section 1260.040 from the Eminent Domain Law and used it to request a dispositive pretrial ruling on inverse condemnation liability. We conclude the trial court erred in using this procedure because the summary judgment statute was available for that purpose and any disputes of material fact could have been resolved in a bench trial. The Court of Appeal reached a similar conclusion and reversed the trial court's judgment. We affirm.

## I. BACKGROUND

### A. Trial Court Proceedings

This case began when the owners of three single-family homes and a small hotel located just to the east of the Interstate 5 freeway (the Property Owners) filed suit against the Department of Transportation and the Orange County Transportation Authority (the Agencies). The Agencies had constructed two walls on the west side of the freeway—the side opposite the Property Owners' properties. Designed as sound barriers, these walls were intended to reduce the level of freeway traffic noise audible on the west side of the freeway. In their complaint, the Property Owners alleged the sound barriers deflected noise, vibrations, dust, and nighttime glare onto their properties. On this basis, they claimed the Agencies are liable to them in inverse condemnation. They also pled trespass and nuisance claims.

The Agencies demurred, and the trial court sustained the demurrer to the trespass claim but overruled the demurrers to the inverse condemnation and nuisance claims. In its demurrer to the inverse condemnation claim, defendant Orange County Transportation Authority argued the Property Owners had

failed to allege the sound barriers caused damage to their properties that was different from the damage caused to neighboring properties. It contended this showing was necessary to prove an inverse condemnation claim based on an "intangible intrusion" onto a property. In overruling the demurrer, the trial court concluded that such a showing is not necessary. The court ruled that the Property Owners' allegations relating to the deflection of noise, vibrations, dust, and nighttime glare onto their properties were sufficient to support their inverse condemnation claim. The Agencies answered the complaint, and both sides conducted discovery.

Three months before the jury trial was set to begin, the Agencies filed the motion at issue in this case. Titled "Motion for Legal Determination of Liability re Inverse Condemnation Action," it requested judgment in the Agencies' favor on the Property Owners' inverse condemnation claim. The Agencies renewed their contention that the Property Owners had to show they had experienced damage to their properties that was different from the damage experienced by neighboring property owners—the contention the court had rejected on demurrer. They further argued that, as a factual matter, the Property Owners could not make this showing. The Agencies also filed a separate "Motion for Legal Determination of Liability re Nuisance Claim," claiming immunity. In support of both motions, the Agencies submitted declarations, deposition transcripts, responses to interrogatories, planning documents, and documentation of complaints about the sound barrier. The Agencies cited section 1260.040 as the basis of their authority to request a legal determination of liability on both claims.

The Property Owners opposed the Agencies' motion related to the inverse condemnation claim on three independent

grounds. First, they argued that a section 1260.040 motion may only be brought in eminent domain actions. Second, they argued that even in an eminent domain action, a section 1260.040 motion cannot be used to request a liability determination. Third, they argued there was substantial evidence supporting a ruling in their favor on liability, such that they were entitled to a bench trial. They contended that the law did not require them to show that their properties were the only ones in the neighborhood that experienced an increase in noise, vibrations, dust, and glare, but instead only that their properties suffered damage beyond what was necessarily incident to their proximity to the sound barriers. To demonstrate they could make this showing, they submitted declarations, photographs, Google Street View images, expert witness declarations, deposition transcripts, sound measurements, and government protocols for noise analysis.

On reply, the Agencies argued a bench trial was not needed. They claimed that section 1260.040 authorizes the court to weigh competing evidence and resolve issues of fact in inverse condemnation and related tort actions. They asserted the documents the parties had provided the court showed neighboring properties experienced similar damage from the sound barriers. Accordingly, they argued, the Property Owners had not proved their inverse condemnation claim.

The trial court granted the Agencies' motions. Entering judgment in the Agencies' favor on the inverse condemnation claim, the court ruled that the Property Owners "cannot meet their burden [of] showing the injuries suffered were 'peculiar' to their properties" because they "cannot show they suffered a unique and peculiar damage 'not such as is common to all property in the neighborhood.'" In support of this ruling, the

court pointed to deposition testimony and documents tending to show that neighboring properties had experienced similar damage. These documents included a map, from which the court inferred that buildings not owned by the Property Owners but situated between their properties were "suffering damages from the [s]ound wall," and a complaint in a separate lawsuit filed by owners of nearby properties. The court also entered judgment against the Property Owners on the nuisance claim. The court did not address the Property Owners' arguments about the scope of section 1260.040 or specify whether it considered that section to be the source of its authority to consider the Agencies' motions.

## B. The Court of Appeal's Decision

On appeal, the Property Owners argued that section 1260.040 does not authorize trial courts to make dispositive rulings on liability in inverse condemnation actions. In response, the Agencies conceded section 1260.040 does not apply "directly" in inverse condemnation actions. However, they asked the Court of Appeal to "import" section 1260.040 into inverse condemnation procedure and authorize its use to request dispositive rulings on inverse condemnation liability, a use the Court of Appeal previously had approved in *Dina v. People ex rel. Dept. of Transportation* (2007) 151 Cal.App.4th 1029 (*Dina*). The Agencies told the Court of Appeal it could do this because the Legislature left the law of inverse condemnation " 'for determination by judicial development' " and "cross-pollination" in the area of takings law "is the general rule."

The Court of Appeal rejected the Agencies' request, disagreeing with *Dina, supra,* 151 Cal.App.4th 1029, to the

extent the *Dina* court viewed section 1260.040 as authorizing a motion procedure that may be used to decide liability issues in inverse condemnation actions. (*Weiss v. People ex rel. Dept. of Transportation* (2018) 20 Cal.App.5th 1156, 1161–1162, 1167–1170 (*Weiss*).)[3] The Court of Appeal concluded there was no reason to judicially create "a novel summary mechanism" for determining inverse condemnation liability. (*Weiss,* at p. 1167.)

Having rejected the Agencies' invitation to "import" section 1260.040 into inverse condemnation procedure, the Court of Appeal concluded that reversal of the trial court's judgment in the Agencies' favor was necessary. (*Weiss, supra,* 20 Cal.App.5th at p. 1176.) It characterized the trial court's decision as, in effect, "an early summary judgment ruling," entered without adherence to "the detailed statutory constraints governing summary judgment motions." (*Id.* at p. 1175.) It observed that this procedure did not "meaningfully 'supplement' existing pretrial procedures governing a summary judgment motion" but simply replaced them, thereby "short circuit[ing] the case on liability grounds." (*Id.* at pp. 1176–1177.) The Court of Appeal further rejected the Agencies' reliance on *Dina, supra,* 151 Cal.App.4th 1029 as a basis for the trial court's authority to resolve the nuisance claim on a section 1260.040 motion, concluding that the Property Owners "were entitled to a jury trial absent a summary judgment motion or other statutorily

---

[3]     As the Court of Appeal recognized, the property owners in *Dina, supra,* 151 Cal.App.4th 1029 did not object to the use of section 1260.040 on the ground that the action " 'involved inverse condemnation rather than eminent domain.' " (*Weiss, supra,* 20 Cal.App.5th at p. 1170.)

authorized manner of case disposition." (*Weiss, supra,* 20 Cal.App.5th at p. 1162.)

The Agencies petitioned for review of the Court of Appeal's ruling on their inverse condemnation cause of action only, citing the Court of Appeal's disagreement with *Dina, supra,* 151 Cal.App.4th 1029. We granted review.

## II. DISCUSSION

The Agencies concede here, as they did in the Court of Appeal, that section 1260.040 applies in eminent domain actions only. They acknowledge that "the statutory language and legislative history express no intent that section 1260.040 should apply in inverse condemnation cases." Nevertheless, the Agencies urge us, as they urged the Court of Appeal, to "import" section 1260.040 into inverse condemnation procedure "as a matter of judicial development" and to sanction their reliance on it to request entry of judgment on an inverse condemnation claim without a bench trial. They contend we can do this because the Legislature has left the development of inverse condemnation law to the judicial branch. And they argue we should do this because the use of the section 1260.040 procedure in inverse condemnation actions would promote the same broad policy objective it does in the eminent domain context: timely resolution. For the reasons discussed below, we decline this request and affirm the judgment of the Court of Appeal.

### A. Section 1260.040 Was Not Intended To Provide for a Case-dispositive Motion in Eminent Domain Actions

To frame our consideration of the Agencies' request that we "import" section 1260.040 into inverse condemnation procedure, we begin with some background on the procedures

governing liability and compensation determinations in eminent domain and inverse condemnation actions, with a focus on the specific purpose section 1260.040 serves in eminent domain proceedings.

### 1. Determining Just Compensation for a Taking

The California Constitution guarantees "just compensation" whenever private property is "taken or damaged for a public use." (Cal. Const., art. I, § 19, subd. (a).) Eminent domain and inverse condemnation are distinct procedures for ensuring that property owners receive just compensation whenever public entities take or damage their property.

Certain aspects of eminent domain law and procedure are codified in the Code of Civil Procedure. These provisions—among them section 1260.040—make up the Eminent Domain Law. (§ 1230.010.) By contrast, the Legislature generally has left inverse condemnation law " 'for determination by judicial development.' " (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 530 (*Regency Outdoor Advertising*).) And the special procedures of the Eminent Domain Law do not apply to inverse condemnation actions.

In an eminent domain action, a public entity exercises its authority to condemn private property. This exercise of authority involves a "quite elaborate and lengthy process established by the Eminent Domain Law and related statutes." (*Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151, 188 (*Property Reserve*).) Before filing the complaint that initiates an eminent domain action, a public entity must have an appraisal performed, make an offer to the property owner for the property's fair market value as established by the appraisal, and adopt a resolution of necessity through a noticed hearing.

(§ 1245.220; Gov. Code, § 7267.2.)  To take possession of the property before judgment, the public entity must make a motion for an order of possession and deposit probable compensation with the state treasury.  (§§ 1255.010, 1255.410.)

The public entity concedes liability at the outset of an eminent domain action, so "there is ordinarily no question that [the public entity] has 'taken or damaged' " the property at issue.  (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 939 (*San Diego Gas*).)  For this reason, "[e]minent domain actions typically focus on the amount of compensation owed the property owner."  (*Regency Outdoor Advertising*, *supra*, 39 Cal.4th at p. 530; see *People v. Ricciardi* (1943) 23 Cal.2d 390, 400; 1 Matteoni, Condemnation Practice in Cal. (Cont.Ed.Bar 3d ed. 2005) § 9.26 (rev. 9/17) (Matteoni).)

By contrast, an inverse condemnation action proceeds under the rules governing ordinary civil actions.  A property owner initiates an inverse condemnation action by filing a complaint in the trial court after the alleged taking has already occurred.  (*Regency Outdoor Advertising*, *supra*, 39 Cal.4th at p. 530.)  As is true of the present action, most inverse condemnation actions involve disputed claims that the public entity has damaged or constructively taken, rather than directly taken, the property at issue.  (*Property Reserve*, *supra*, 1 Cal.5th at pp. 189–190; Matteoni, *supra*, § 13.1.)  In such actions, " 'the property owner must first clear the hurdle of establishing that the public entity has, in fact, taken [or damaged] his or her property' " before the issue of just compensation comes into play.  (*San Diego Gas*, *supra*, 13 Cal.4th at p. 940.)  Issues of inverse condemnation liability may be addressed on demurrer, through a motion for summary judgment or summary adjudication, or at

a bench trial. (§§ 430.30, 437c; *Healing v. California Coastal Com.* (1994) 22 Cal.App.4th 1158, 1170 (*Healing*).)

The California Constitution gives property owners the right to have a jury determine the compensation they are owed when a public entity takes or damages their property. (Cal. Const., art. I, § 19, subd. (a).) But "[w]e have long held that this jury right applies only to determining the appropriate amount of compensation . . . ." (*City of Perris v. Stamper* (2016) 1 Cal.5th 576, 593 (*City of Perris*).) All other questions of fact or mixed questions of law and fact are decided by the court. (*Metropolitan Water Dist. of So. California v. Campus Crusade for Christ, Inc.* (2007) 41 Cal.4th 954, 971 (*Metropolitan Water Dist.*).)

In both eminent domain actions and inverse condemnation actions, the key evidence in a jury trial is expert testimony concerning the valuation of the property at issue. (Recommendation: Early Disclosure of Valuation Data and Resolution of Issues in Eminent Domain (Oct. 2000) 30 Cal. Law Revision Com. Rep. (2000) p. 573 (CLRC Valuation Recommendations); Matteoni, *supra*, § 9.29.) The Eminent Domain Law provides special pretrial procedures for the exchange of valuation data used by each side's experts and the making of final offers and demands. (§§ 1258.210–1258.300.) If at the time of this exchange the trial court has not yet ruled on evidentiary and legal issues affecting the determination of compensation, the experts' competing valuations of the condemned property will be further apart from each other and the case less likely to settle. (CLRC Valuation Recommendations, *supra*, at pp. 584–587.) As with other provisions of the Eminent Domain Law governing the unique course of eminent domain proceedings, the Legislature has not

made these exchange procedures applicable in inverse condemnation actions.

### 2. *Evidentiary and Legal Issues Affecting the Determination of Compensation*

Before the jury trial on compensation, legal issues and mixed questions of law and fact frequently arise concerning the proper measure of compensation or concerning whether the property owner is entitled to compensation for a specific kind of damage, loss, or injury. (*City of Perris*, *supra*, 1 Cal.5th 576, 593–596; *Metropolitan Water Dist.*, *supra,* 41 Cal.4th at p. 971.) In eminent domain cases, these issues often relate to severance damages—compensation for damage to, or diminished value of, the remainder of a parcel of land when the public entity condemns only part of the parcel. (*City of Perris,* at pp. 593–594; Matteoni, *supra*, § 5.1.) For example, a court may decide whether compensation is due for interference with access to the remainder of the parcel, for temporary loss of use of the remainder, or for damage from noise, dust, fumes, or vibrations caused by the public use of the condemned portion of the parcel. (*Metropolitan Water Dist.,* at p. 971; Matteoni, *supra*, §§ 5.21, 5.26, 5.28.) Similar issues arise in the inverse condemnation context, such as whether compensation is due for impaired access to a parcel neighboring the condemned property, for unreasonable interference with neighboring property during construction of a public improvement, or—as in the present case—for damage from noise, dust, fumes, or vibrations caused by the public use of nearby property. (Matteoni, *supra*, §§ 5.21, 13.4.)

The court decides these issues in the liability phase of an inverse condemnation action—on demurrer, at summary judgment, or in a bench trial held prior to any jury trial on

11

compensation. (§§ 430.30, 437c; *Orpheum Bldg. Co. v. San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863, 868.)[4] The resolution of these issues is often dispositive of inverse condemnation actions, in which claims of property damage or constructive taking frequently are the sole basis of liability. (*San Diego Gas*, *supra*, 13 Cal.4th at pp. 939–940.)

In eminent domain actions, by contrast, where the public entity concedes at least partial liability at the outset of the case, a court's ruling on an issue concerning entitlement to a particular category of compensation is seldom case dispositive. Instead, the ruling "affect[s] the landowner's compensation by permitting the jury to consider or preventing it from considering certain types of recovery" and "frame[s] the ultimate factual inquiry into the amount of compensation owed." (*City of Perris*, *supra*, 1 Cal.5th at p. 596; see, e.g., *People ex rel. Dept. of Transportation v. Hansen's Truck Stop, Inc.* (2015) 236 Cal.App.4th 178, 182–183 [court determined property owners could pursue damages for impairment of access and loss of business goodwill, allowing question of amount of compensation due for these categories of harm to go to jury].)

---

[4] Because inverse condemnation actions usually involve issues of liability (on which there is no jury trial right) in addition to issues concerning the amount of compensation due (on which there is a right to a jury trial), trial courts often bifurcate inverse condemnation actions and decide them in two phases. In the first phase, the court determines whether the public entity's actions have resulted in compensable taking or damage via dispositive motions or, when necessary, a bench trial. In the second phase, if there is one, a jury determines the amount of compensation due. (Matteoni, *supra*, § 17.8; *Healing*, *supra*, 22 Cal.App.4th at p. 1170.)

Before section 1260.040 was enacted, disputes about which categories of alleged damage, loss, or injury a jury should be allowed to consider in an eminent domain action were often resolved via motions in limine seeking the exclusion of certain expert testimony or in connection with disputes over the formulation of jury instructions. (Van Alstyne, *Statutory Modification of Inverse Condemnation: The Scope of Legislative Power* (1967) 19 Stan. L.Rev. 727, 748; CLRC Valuation Recommendations, *supra*, at p. 585.) This practice of resolving evidentiary and legal issues concerning the determination of compensation on the eve of trial, or sometimes even during trial, impeded early resolution of eminent domain actions. (CLRC Valuation Recommendations, at p. 585.) Section 1260.040 addresses this problem.

### 3. *Code of Civil Procedure, Section 1260.040*

The Legislature enacted section 1260.040 to promote earlier resolution of issues affecting the determination of compensation, thereby preventing these issues from improperly going to the jury and increasing the likelihood of pretrial settlement. (Legis. Counsel's Dig., Assem. Bill No. 237 (2000–2001 Reg. Sess.) 428 Stats. 2001, Summary Dig., pp. 181–182; Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1260.040, p. 623.) Section 1260.040 authorizes a party to an eminent domain action to file a motion requesting a ruling on "an evidentiary or other legal issue affecting the determination of compensation" and provides that the trial court may postpone the deadlines for final settlement offers "for a period sufficient to enable the parties to engage in further proceedings before trial" after receiving the court's ruling on the motion. The section specifies that it "supplements, and does not replace any other pretrial or trial procedure otherwise available

WEISS v. PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION

Opinion of the Court by Groban, J.

to resolve an evidentiary or other legal issue affecting the determination of compensation." (*Id.*, subd. (c).)

The California Law Revision Commission proposed section 1260.040 as part of a package of reforms to the Eminent Domain Law designed to "facilitate resolution of eminent domain cases without the need for trial." (CLRC Valuation Recommendations*, supra*, at p. 571.) Under the amended eminent domain procedures, valuation data and expert lists are exchanged 90 days before trial, and final offers of and demands for compensation are exchanged 20 days before trial. (§§ 1258.220, subd. (a), 1250.410.) The section 1260.040 motion—to be filed 60 days before trial—was intended to allow the isolation and decision of evidentiary and legal issues affecting the determination of compensation well before the eve of trial, and even before the parties exchange final offers and demands. (§ 1260.040, subd. (c); CLRC Valuation Recommendations, at pp. 584–585, 573–574; see Dept. Transportation, Enrolled Bill Rep. on Assem. Bill No. 237 (2001–2002 Reg. Sess.) Oct. 2001, p. 3 [legislation would provide "[t]he ability to challenge by pretrial motion improper valuation methods used by appraisers . . . that, under current practice, are often improperly sent to juries"].) In recommending the Legislature adopt section 1260.040, the Law Revision Commission expressed its hope that earlier decision of these issues would narrow the gap between competing expert valuations, thereby facilitating settlement through alternative dispute resolution. (CLRC Valuation Recommendations, *supra*, at pp. 584–587.) Because the public entity's liability is established at the outset of an eminent domain action, the Legislature did not contemplate that a section 1260.040 motion

would be used to dispose of an eminent domain action in its entirety.

## B. We Decline To Import Section 1260.040 into Inverse Condemnation Procedure

With this understanding of the purpose of section 1260.040 in mind, we turn to the Agencies' request that we "import" section 1260.040 into inverse condemnation procedure. Some general practices and principles guide our consideration of this request. To begin, as a general practice, we leave to the Legislature the adoption and amendment of statewide rules governing trial court proceedings. (See *In re Cook* (2019) 7 Cal.5th 439, 459 (*Cook*) ["[T]he Legislature is in a superior position to consider and implement rules of procedure in the first instance."].) Gaps in statutory rules may be filled by the Judicial Council, which the California Constitution vests with the authority to "adopt rules for court administration, practice and procedure" that are consistent with statutory procedures. (Cal. Const., art. VI, § 6, subd. (d).) Courts also have the authority to adopt local rules, so long as those rules are consistent with statutory procedures adopted by the Legislature and the Rules of Court adopted by the Judicial Council. (§ 575.1; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 (*Rutherford*); see Cal. Rules of Court, rule 3.20 [preempting certain categories of local rules].) And, as the Agencies point out, when no procedure is specified by statute or rule, judges may fashion nonstatutory procedures suitable to the specific cases before them. (*Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 812–813 (*Citizens Utilities Co.*).) Courts, however, do not have the authority to adopt procedures or policies that conflict with statutory law or the Rules of Court. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 612.)

Considering these general practices and principles, the Agencies' request that we "import" section 1260.040 into inverse condemnation procedure is unusual. As the Agencies have conceded, nothing in section 1260.040's language or legislative history suggests that the Legislature intended the motion procedure it authorizes to be used in inverse condemnation actions. And the Agencies have not suggested that any other statutory or constitutional rule requires such a procedure to exist in inverse condemnation practice. (Cf. *Cook, supra*, 7 Cal.5th at pp. 458–459 [adopting evidence preservation procedure to give effect to right recognized in *People v. Franklin* (2016) 63 Cal.4th 261].) Instead, the Agencies suggest that by leaving inverse condemnation law "for determination by judicial development" (Cal. Law Revision Com. com., 19A West's Ann. Code Civ. Proc. (2019 ed.) foll. § 1263.010, p. 6), the Legislature authorized appellate courts to "judicially import" the special procedural rules in the Eminent Domain Law into inverse condemnation procedure. The Agencies contend that, pursuant to this purported authorization, we may "import" any provision of the Eminent Domain Law into the inverse condemnation context unless the Legislature has created a specific obstacle to our doing so.

We understand this statement of legislative intent more narrowly than the Agencies do—namely, as a recognition that certain rules must apply equally in eminent domain and inverse condemnation actions to ensure that any differences do "not yield different results in terms of compensation." (*Mt. San Jacinto Community College Dist. v. Superior Court* (2004) 117 Cal.App.4th 98, 105 (*Mt. San Jacinto*).) Because inverse condemnation and eminent domain actions both give effect to the same underlying right to compensation, California courts

have long applied principles affecting the amount of compensation due to a property owner equally in the eminent domain and inverse condemnation contexts. (Matteoni, *supra*, § 13.1.) Indeed, before the Eminent Domain Law's enactment, we applied in an inverse condemnation action a judicial rule developed in eminent domain cases for determining when impairment of right of access constitutes a compensable taking, reasoning that "[t]he principles which affect the parties' rights in an inverse condemnation suit are the same as those in an eminent domain action." (*Breidert v. Southern Pac. Co.* (1964) 61 Cal.2d 659, 663, fn. 1.)

The Law Revision Commission seems to have acknowledged this when, in 1975, it noted that while the "rules of compensation" provided by the new Eminent Domain Law were intended only "for eminent domain proceedings[,] the law of inverse condemnation [was] left for determination by judicial development." (Cal. Law Revision Com. com., 19A West's Ann. Code Civ. Proc*., supra*, foll. § 1263.010, p. 6.) This comment suggests the commission contemplated that courts presiding over inverse condemnation actions would continue to apply rules of eminent domain law affecting the amount of compensation due. However, nothing in the legislative history of the Eminent Domain Law's enactment suggests the Legislature intended to authorize appellate courts to "import" into inverse condemnation procedure the statutory rules setting out the special procedures unique to eminent domain actions.

Decisions issued after the Eminent Domain Law's enactment have likewise recognized that, while inverse condemnation actions and eminent domain actions involve different procedures, certain rules of eminent domain law must apply in inverse condemnation actions to give equal effect to the

right to compensation. (*Mt. San Jacinto*, *supra*, 117 Cal.App.4th at p. 105.) For example, in *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 948, the Court of Appeal held that the "measure of damages in inverse condemnation, as in eminent domain actions, is 'market value.' " And in *Jefferson Street Ventures, LLC v. City of Indio* (2015) 236 Cal.App.4th 1175, 1198, the Court of Appeal applied in an inverse condemnation action a rule for determining when "de facto taking" occurs that had been developed in eminent domain cases.

The case on which the Agencies primarily rely for the proposition that an appellate court can "import" provisions of the Eminent Domain Law into inverse condemnation law, *Chhour v. Community Redevelopment Agency* (1996) 46 Cal.App.4th 273 (*Chhour*), is consistent with these decisions. The plaintiff in *Chhour* was the owner of a seafood restaurant in a shopping center that had been condemned by a community redevelopment agency. (*Id.* at p. 277.) The owner filed suit after the agency refused to initiate eminent domain proceedings against the seafood restaurant or provide compensation for injury to the restaurant's business resulting from forced relocation. (*Ibid.*) The agency argued that it was not liable to the business owner for these damages because the entitlement to compensation for loss of business goodwill was statutory, not constitutional, and the statute at issue—part of the Eminent Domain Law—applied only to eminent domain proceedings. (*Id.* at pp. 278–279.) The Court of Appeal disagreed, holding that loss of business goodwill is compensable in an inverse condemnation action to the same extent as it is compensable, by statute, in eminent domain actions. (*Id.* at p. 282.) It observed that the "only distinction" between the restaurant owner's case

WEISS v. PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION

Opinion of the Court by Groban, J.

and the case of a person whose property had been condemned in an eminent domain proceeding is that the restaurant owner "has been forced to initiate a legal proceeding to recover." (*Id.* at p. 279.) Because inverse condemnation and eminent domain procedures give effect to " 'the same limitation on governmental power' " (*id.* at pp. 279–280), the court reasoned, it makes sense for the judiciary and the Legislature to "cross-pollinate in this area" (*id.* at p. 279). *Chhour* is thus consistent with the proposition that the differences between eminent domain law and inverse condemnation law should not "yield different results in terms of compensation." (*Mt. San Jacinto, supra,* 117 Cal.App.4th at p. 105.)

While the "cross-pollination" embraced by *Chhour, supra,* 46 Cal.App.4th 273, may make sense with respect to provisions of the Eminent Domain Law that affect the amount of compensation due to a property owner, the special rules governing the procedure by which a public entity exercises the eminent domain power are another matter. As noted above, inverse condemnation actions proceed by the rules governing ordinary civil actions, not the special rules that apply to eminent domain proceedings. Indeed, much of the "elaborate and lengthy process established by the Eminent Domain Law and related statutes"—would serve no purpose in an inverse condemnation action. (*Property Reserve, supra,* 1 Cal.5th at p. 188; see, e.g., §§ 1245.220 [requiring resolution of necessity], 1255.410 [authorizing motion for order of possession].) *Chhour* does not suggest that an appellate court may "import" into the inverse condemnation context provisions of the Eminent

Domain Law that set out the special procedures applicable to eminent domain actions, such as section 1260.040.[5]

We recognized the distinction between rules governing the right to compensation and rules governing the general course of proceedings in *Regency Outdoor Advertising*, *supra*, 39 Cal.4th 507, where we considered whether a statutory carve-out for eminent domain proceedings should be interpreted to encompass inverse condemnation proceedings as well. (*Id.* at p. 529.) At issue in *Regency Outdoor Advertising* was whether a party to an inverse condemnation action was entitled to an award of expert witness fees under section 998, subdivision (c). That provision authorizes courts to award such fees "in any action or proceeding other than an eminent domain action." (§ 998, subd. (c)(1).) We concluded this carve-out for eminent domain actions did not encompass inverse condemnation actions, reasoning that "the Legislature perceives a difference between eminent domain and inverse condemnation," based on the special nature of eminent domain proceedings. (*Regency*

---

[5] The Agencies also rely on *Dina v. People ex rel. Dept. of Transportation, supra*, 151 Cal.App.4th 1029, at pp. 1044–1045 in support of their argument that the authority to "judicially import" provisions of the Eminent Domain Law into the inverse condemnation context extends to section 1260.040. Although *Dina* may be correct that "[n]othing in the language of section 1260.040 or its legislative history bars a party from seeking an order on a legal issue that disposes of an inverse condemnation action" (*id.* at p. 1044), that does not mean we should "import" section 1260.040 into inverse condemnation procedure. As the Agencies acknowledge, nothing in the statutory language or legislative history suggests the Legislature intended section 1260.040 motions to be used in inverse condemnation proceedings. We disapprove *Dina* to the extent it is inconsistent with our reasoning.

*Outdoor Advertising*, at p. 530.) With this difference in mind, there is no reason to think the Legislature contemplated that an appellate court would "import" section 1260.040 into inverse condemnation procedure.

Nevertheless, the Agencies urge us to "import" section 1260.040 into inverse condemnation procedure because, they contend, doing so would promote timely resolution—the same broad objective the Legislature intended it to promote in the eminent domain context. Relying on *Dina, supra*, 151 Cal.App.4th at pp. 1043–1045, they urge us to interpret section 1260.040's provision for a motion to decide "other legal issues" affecting the determination of compensation to encompass issues of liability that in inverse condemnation actions normally would be raised on demurrer, at summary judgment, or in a bench trial. The Agencies point out that liability determinations in inverse condemnation actions often involve disputed factual questions and so are not amenable to resolution on summary judgment. They explain that the use of section 1260.040 motions in inverse condemnation proceedings would promote timely resolution by providing a different and more expedient method of summary disposition than those provided for by statute, one that serves as a "substitute for a bench trial." They assert we should "import" section 1260.040 into inverse condemnation procedure because, in their view, summary judgment proceedings and bench trials are unduly "cumbersome."

To begin, we note that although the same arguments might be made for "importing" section 1260.040 into many types of civil actions, the Agencies do not argue the provision should be made generally available to civil litigants. Indeed, they have now abandoned their contention that it was proper for the trial

court to use a section 1260.040 proceeding to issue a dispositive ruling on the Property Owners' nuisance claim. (See *Dina, supra,* 151 Cal.App.4th at pp. 1039, 1052–1054 [concluding such a use was proper].) As is true of other types of civil actions, the Legislature's specific reasons for wanting to encourage prompt resolution of eminent domain actions do not necessarily carry over to the inverse condemnation context. (*Regency Outdoor Advertising, supra,* 39 Cal.4th at p. 530.) When a public entity condemns property, speedy resolution allows the public entity to expeditiously put the property to public use and facilitates prompt compensation of the property owner. The same need for speedy resolution is not present in inverse condemnation actions, in which the government entity's liability is contested and the property owner typically claims entitlement to compensation for property damage or diminution in value resulting from a taking or damage that already has occurred. Perhaps for this reason, the Legislature has chosen to give calendar preference to eminent domain actions but not inverse condemnation actions. (§ 1260.010.)

Moreover, the Agencies' arguments for importing section 1260.040 into inverse condemnation procedure ignore the specific function section 1260.040 was designed to serve in eminent domain proceedings: to facilitate the decision of issues "affecting the determination of compensation" (§ 1260.040, subd. (a)) or otherwise put, "affecting valuation" (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc., *supra,* foll. § 1260.040, p. 623). As described above, the Legislature's purpose in adopting section 1260.040 was to provide a mechanism to resolve discrete evidentiary and legal questions concerning the proper valuation of condemned property— questions that, before section 1260.040's enactment, parties had

been presenting to the court in motions in limine seeking to limit testimony or disputes about jury instructions. (CLRC Valuation Recommendations, *supra*, at p. 585.) As we have explained, the section 1260.040 proceeding was intended to facilitate prompt resolution by allowing the parties, before the compensation trial, to evaluate competing expert valuations of the condemned property based on a shared understanding of which categories of alleged loss are compensable. (CLRC Valuation Recommendations, *supra*, at p. 584.)[6] Section 1260.040 thus promotes the early resolution of eminent domain actions not by providing a procedure for disposing of a case that is less "cumbersome" than a summary judgment proceeding or bench trial, but instead by providing a procedural tool for trial courts to make evidentiary and legal rulings on questions related to the valuation of the condemned property before the parties engage in final pretrial settlement efforts. (See § 1250.430 [authorizing postponement of trial for alternative dispute resolution].)[7]

---

[6] The ways in which trial courts in eminent domain actions have used the section 1260.040 motion procedure are consistent with this specific purpose. For example, they have used the procedure to determine whether to exclude expert testimony based on a disputed valuation method and to determine whether a business owner is entitled to compensation for loss of business goodwill. (*Central Valley Gas Storage, LLC v. Southam* (2017) 11 Cal.App.5th 686, 689–691 (*Gas Storage*); *Los Angeles Unified School Dist. v. Pulgarin* (2009) 175 Cal.App.4th 101, 104 (*Pulgarin*).)

[7] The Agencies argue that importing section 1260.040 into inverse condemnation procedure would promote settlement because the prospect that public entities might be required to pay prevailing property owners' litigation expenses under section 1036 provides public entities an incentive to settle once

Considering this specific function, it is unsurprising that the language of section 1260.040 does not appear to contemplate that the procedure would be used to request entry of judgment. Subdivision (b) of section 1260.040, allowing courts to postpone trial "to enable the parties to engage in further proceedings before trial in response to [the trial court's] ruling on the motion," suggests that the Legislature thought eminent domain proceedings would generally continue after a decision on a section 1260.040 motion. The absence of any language concerning entry of judgment in section 1260.040 indicates the same. And perhaps most significantly, section 1260.040 states that it "supplements, and does not replace any other pretrial or trial procedure otherwise available to resolve an evidentiary or other legal issue affecting the determination of compensation." (§ 1260.040, subd. (c).) In eminent domain actions—in which liability is established at the outset—there is little risk that a section 1260.040 motion would replace a dispositive motion or a bench trial. While a court may determine that one of multiple

_____

liability is found. This argument, too, ignores the specific way in which section 1260.040 was intended to promote settlement of eminent domain actions, i.e., by clarifying the range of compensation a jury could award. To the extent section 1260.040 and section 1036 would operate in conjunction to promote settlement of inverse condemnation actions, they would do so by making it clear before trial that a public entity will have to pay the property owner's litigation expenses. Section 1260.040 does not serve that function in eminent domain proceedings for two reasons. First, the public entity's liability is established at the outset of an eminent domain action. And second, section 1036 does not apply in eminent domain proceedings, where the award of litigation expenses is instead governed by section 1250.410.

property owner defendants is not entitled to compensation (cf. *Pulgarin, supra,* 175 Cal.App.4th at p. 104) or that a public entity is not liable for a particular type or category of damages the property owner has claimed (see *Gas Storage, supra,* 11 Cal.App.5th at pp. 690–693), a ruling on a section 1260.040 motion would rarely, if ever, be case dispositive.[8] In the inverse condemnation context, by contrast, in which the entire action may be based on an issue such as loss of business goodwill, impairment of access, or—as in this case—the intrusion of noise, dust, fumes, and vibrations onto private property, such issues frequently will be resolved by dispositive motion or bench trial before the jury trial on compensation. Used for this purpose, a section 1260.040 motion would, as the Court of Appeal observed, replace, not supplement, existing procedures. (*Weiss, supra,* 20 Cal.App.5th at p. 1176.)

The Agencies complain that existing procedures are inadequate for their purposes because most inverse condemnation liability issues involve factual questions or mixed questions of law and fact of a sort that could not be resolved on summary judgment. They observe that section 1260.040 "does not require that the trial [court] make its ruling based solely on declarations and documents" and "[i]f the judge finds that witness testimony is required, the judge may set an early bench trial." But used in this way, a section 1260.040 motion would take the place of the bench trial on liability to which an inverse

---

[8] We offer no view on whether, in an eminent domain action, a section 1260.040 proceeding may properly be used in the manner the Agencies have asserted it can be used in the instant inverse condemnation proceedings—to weigh evidence and resolve factual disputes material to liability issues without a bench trial.

condemnation plaintiff normally would be entitled. (Cf. *Skoumbas v. City of Orinda* (2008) 165 Cal.App.4th 783 [reversing summary judgment on takings liability in inverse condemnation case]; *Odello Bros. v. County of Monterey* (1998) 63 Cal.App.4th 778 [same].)

At bottom, the Agencies' request is that we create a new, uncodified dispositive motion procedure specific to inverse condemnation actions that serves the same function as a motion for summary judgment or a bench trial but is less "cumbersome." Because such a procedure would not give effect to a property owner's right to compensation and would simply supplant existing procedures, we decline this request.

## C. The Trial Court Erred in Entering Judgment in Response to the Agencies' "Motion for Legal Determination of Liability"

Our decision to decline the Agencies' request does not necessarily mean it will always be error for a trial court to use a procedure modeled on a provision of the Eminent Domain Law in the inverse condemnation context. Trial courts have inherent and statutory authority to devise and utilize procedures appropriate to the specific litigation before them. (§ 187; *Rutherford*, *supra*, 16 Cal.4th at p. 967; *Citizens Utilities Co.*, *supra*, 59 Cal.2d at pp. 812–813.) This authority " 'arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function.' " (*James H. v. Superior Court* (1978) 77 Cal.App.3d 169, 175.) In the inverse condemnation context, we have held that trial courts have the authority "to provide for the assessment of just compensation in situations not within the purview of existing statutory provisions." (*Citizens Utilities Co.*, at p. 812.) In *Citizens Utilities Co.*, we upheld a trial court's use

of a novel procedure for valuing a property owner's water system, observing that since "the Legislature has failed to provide a procedure to cover the contingency involved, pursuant to its inherent powers the court had the power to devise a proper procedure." (*Ibid*.) And as particularly relevant in this case, we have held that trial courts may, when necessary, "follow provisions of the Code of Civil Procedure which are harmonious with the objects and purposes of the proceeding although those provisions are not specifically made applicable by the statute which creates the proceeding." (*Tide Water Associated Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 825.) However, when a statute or rule of court provides an applicable procedure, a trial court may neither substitute a procedure it has itself devised nor adopt an existing procedural provision that is inapplicable to the case before it. (*Rutherford, supra,* 16 Cal.4th at p. 967; see *Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 296 [trial court exceeded its authority by ordering nonsimultaneous exchange of expert witness information where statute required simultaneous exchange].)

As described above, this case comes to us on appeal from the trial court's order granting the Agencies' "Motion for Legal Determination of Liability re Inverse Condemnation Action"—styled as a section 1260.040 motion—and entering judgment on the Agencies' behalf. The Agencies asked the trial court to decide a mixed question of law and fact: whether the damage the Property Owners claimed was "peculiar" to their properties, making the damage compensable under our decision in *Varjabedian v. Madera* (1977) 20 Cal.3d 285, 298 (*Varjabedian*). The Agencies supported their motion with extensive documentary evidence and, in their briefing, urged the trial

court to weigh their evidence against the competing evidence submitted by the Property Owners.

In ordinary civil actions such as this one, the procedure by which to request a pretrial entry of judgment on the ground that there is no dispute of material fact is summary judgment, or when the request is for a dispositive ruling on one of multiple claims within an action, summary adjudication. (§ 437c; Cal. Rules of Court, rule 3.1350.) Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party. (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) To ensure that the opposing party has notice of the factual issues in dispute and an opportunity to present the evidence needed to defeat the motion, the statute requires that the parties submit separate statements of undisputed facts. (§ 437c, subd. (c); *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 335.) These separate statements also help the court isolate and identify the facts that are in dispute, which facilitates the court's determination whether trial is necessary. (*United Community,* at pp. 335–337.) When a court grants a motion for summary adjudication on the ground that there is no triable issue of material fact, the statute requires the court to "specify the reasons for its determination," with reference to "the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists." (§ 437c, subd. (g).) Adherence to these provisions safeguards the rights of the party opposing summary adjudication and allows for meaningful appellate review.

The procedure the trial court employed in this case was improper because it supplanted a motion for summary adjudication on the Property Owners' inverse condemnation claim or, to the extent the trial court weighed the evidence, a bench trial on liability.[9] Indeed, this case illustrates some of the hazards of using a nonstatutory motion to request entry of judgment. The Agencies' motion presented a mixed question of law and fact concerning whether the damage was "peculiar" to the Property Owners' properties, the answer to which turns on whether the properties were " 'singled out' " to suffer the detrimental effects of the sound barriers, making "the policy favoring distribution of the resulting loss" strong and "the likelihood that compensation will impede necessary public construction [] . . . relatively slight." (*Varjabedian, supra,* 20 Cal.3d at p. 298.) On the face of the trial court's decision, it is not clear whether it resolved factual disputes material to this determination in reaching its conclusion that the Property Owners "cannot meet their burden [of] showing the injuries suffered were 'peculiar' to their properties."[10] Had the Agencies filed a motion for summary adjudication rather than a "Motion for Legal Determination of Liability," the parties would have been required to submit separate statements clarifying which facts were disputed and which were undisputed. The trial

---

[9] The Agencies do not argue that, if the trial court erred in entering judgment in response to their nonstatutory motion, that error was harmless. We therefore do not consider that question.

[10] We note the Property Owners argued in the Court of Appeal that the trial court erred by requiring them to show that their properties were the only ones in the neighborhood that experienced an increase in noise, vibrations, dust, and glare. This question is not before us and we express no view on it.

court's order would have employed the familiar summary judgment standard, specifying the reasons for its decision with reference to the evidence showing whether a triable issue of fact exists. And the parties would have avoided all that has ensued on appeal.

There may be cases in which the use of a nonstatutory motion procedure to dismiss a cause of action before trial is called for, but courts should be wary of such requests. As the Court of Appeal warned, the incautious use of such a procedure risks providing inadequate procedural protections, infringing on the jury trial right, and unnecessary reversal. (*Weiss*, *supra*, 20 Cal.App.5th 1175, citing *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1594; *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 170–173.) Courts should be careful not to prioritize efficiency and conservation of judicial resources over access to justice and procedural fairness. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1353.) Though limited use of nonstatutory motion procedures may be appropriate in inverse condemnation actions, it is important to remember that summary judgment, summary adjudication, and bench trials play a central role in our civil trial system. Trial courts should exercise caution before dispensing with these procedures.

## III. CONCLUSION

We deny the Agencies' request that we "judicially import" section 1260.040 into inverse condemnation procedure. Because the trial court erred in entering judgment on the Agencies' "Motion for Legal Determination of Liability" rather than requiring them to file a motion for summary adjudication or

proceed to a bench trial, we affirm the judgment of the Court of Appeal.


**GROBAN, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Weiss v. People ex rel. Department of Transportation

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 20 Cal.App.5th 1156
**Rehearing Granted**

_____

**Opinion No.** S248141
**Date Filed:** July 16, 2020

_____

**Court:** Superior
**County:** Orange
**Judge:** Kirk H. Nakamura

_____

**Counsel:**

Peterson Law Group, John S. Peterson, Joseph A. Schwar, Stacy W. Thomsen; Law Office of Martin N. Buchanan and Martin N. Buchanan for Plaintiffs and Appellants.

Matteoni, O'Laughlin & Hechtman and Norman E. Matteoni as Amicus Curiae on behalf of Plaintiffs and Appellants.

Woodruff, Spradlin & Smart, Gary C. Weisberg, Laura A. Morgan and Esther P. Lin for Defendants and Respondents Orange County Transportation Authority and Department of Transportation.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Jennifer L. Pancake and Andrew C. Rawcliffe for Defendant and Respondent Orange County Transportation Authority.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John S. Peterson
Peterson Law Group, PC
19800 MacArthur Blvd., Suite 290
Irvine, CA 92612
(949) 955-0127

Michael G. Colantuono
Colantuono, Highsmith & Whatley, PC
790 E. Colorado Blvd., Suite 850
Pasadena, CA 91101-2109
(213) 542-5700

Gary C. Weisberg
Woodruff, Spradlin & Smart, APC
555 Anton Blvd., Suite 1200
Costa Mesa, CA 92626-7670
(714) 558-7000